**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: )<br>)<br>JOHN J. PETTI and DENISE A. PETTI, )<br>)<br>Debtors, ) | Chapter 7<br>CASE NO. 19-000667<br>Honorable Jacqueline P. Cox |
| CAREN ASHER, )<br>)<br>)<br>Plaintiff, )<br>v. )<br>)<br>JOHN J. PETTI, an individual, )<br>)<br>Defendant. ) | Adv. No. 19-00592 |

**PLAINTIFF'S PRE-TRIAL BRIEF**

**PRELIMINARY STATEMENT**

Plaintiff Caren A. Asher (herein referred to as "Ms. Asher") seeks that her $600,000 debt personally guaranteed by Defendant John J. Petti (herein referred to as "Defendant" or "Petti") be found non-dischargeable under Sections 523(a)(2)(A), Section 523(a)(4), and Section 523(a)(6) of the United States Bankruptcy Code and enter judgment for that amount against Defendant. In the context of the Code, fraud "is a generic term, which embraces all multifarious means which human ingenuity can devise, and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite invariable rule can be called down as a general proposition defining fraud and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated." *McClellan v. Cantrell*, 217 F.3d 890 (7th Cir. 2000). At trial, Ms. Asher will present extensive evidence that

Defendant, both in his conduct as a potential business partner and as a fiduciary of the company, committed acts of fraud that entitle Ms. Asher to the relief that she seeks.

## STATEMENT OF FACTS

Between 2014 and 2016, the Parties managed a beer company called Black Belt Brewery (herein referred to as "Black Belt"), which was located in Lake Zurich, Illinois. Black Belt was closed in 2017.

**A. Defendant Solicits Ms. Asher**

Ms. Asher found the business by answering an advertisement that she read in the New York Times. She reached out to the Defendant and his partner, Mark Abraham. Ms. Asher had no prior relationship with the Defendant or his partner before this time. The Defendant described their business proposal In order to enter the business, Ms. Asher was asked to put $600,000 of her own money as an investment into Black Belt. During these negotiations, the Debtor made the following representations that ultimately convinced Ms. Asher to enter into business with the Debtor and Mr. Abraham: a) that Black Belt would retain distribution rights to Cook County, thereby controlling a large portion of the market and keeping costs low; b) that Ms. Asher would be appointed a Class A member of Black Belt and all decisions, including who retains distribution rights, would be reviewed by Ms. Asher; and c) the Debtor would personally guarantee the $600,000.00 loan.  Based on the Defendant's representation, Ms. Asher was induced into turning over $600,000.00 and entering into the business.

**B. The Rise and Fall of Black Belt Brewery**

Starting in 2016, Black Belt became an operational business.  Almost from the beginning, Defendant failed to manage the business properly.  Instead of being a "top

down" process, Ms. Asher found herself routinely outside the proper chain on decisions. Mr. Petti would later describe the business management as a "free-for-all." This was evident in the handling of Black Belt's distribution rights. Despite Ms. Asher being the one to make all decision and being promised that Cook County would be retained by Black Belt, an agreement between Chicago Beer Trade ("CBT") and Black Belt was drafted and eventually filed. A false distribution agreement was provided for her approval, which was later discarded. Mr. Petti only later admitted to filing the unapproved distribution agreement. Soon thereafter, Black Belt could not sustain the business and shut down permanently in 2017.

**C. Procedural History**

On April 2, 0219, after discovering the bankruptcy, Ms. Asher filed the underlying adversary complaint. A subsequent First Amended Complaint was filed on May 31, 2019. On July 11, 2019, and in response to Plaintiff's Amended Complaint filed May 31, 2019, Plaintiff, through former counsel, filed a response to the complaint. In general, the Defendant denied the allegations set forth in the complaint. The Defendant raised the following defenses: i) Failure to state a claim. No dispositive motion pursuant to this defense was filed; ii) Waiver; iii) Laches; and iv) Estoppel. The Defendant raised no counterclaims. No amendment to the defenses have been filed since this filing.

In February 2021, a motion for summary judgment was granted and entered in Ms. Asher's favor. In February 2022, after said order was vacated, the Motion was denied and the matter returned for trial schedule. Trial is now set for August 9, 2022 and August 10, 2022 at 9:00 a.m.

## ARGUMENT

For a Plaintiff to prevail under 11 U.S.C §523(a)(2)(A), a Plaintiff must show that the Debtor made false representations, false pretenses, or actual fraud. *11 U.S.C. §523(a)(2)(A)*.

For a plaintiff to prevail under 11 U.S.C. §523(a)(4), a Plaintiff must show that the Debtor committed: (1) fraud or defalcation while acting as a fiduciary; (2) embezzlement; or (3) larceny. *11 U.S.C. §523(a)(4)*. The Seventh Circuit has made it clear that misrepresentation and reliance thereon are not always required to establish actual fraud. *McClellan v. Cantrell*, 217 F.3d 890 (7th Cir. 2000). All that needs to be established: (1) a fraud occurred; (2) the debtor intended to defraud the creditor; and (3) the fraud created the debt that is the subject of the discharge dispute. *McClellan v. Cantrell*, 217 F.3d 890 (7th Cir. 2000).

I. **MS. ASHER'S $600,000.00 LOAN IS NON-DISCHARGEABLE UNDER SECTION 523(A)(2)(A)**

In order to establish an exception to discharge, the Plaintiff must establish the following elements: (1) the Debtor made a false representation of fact; (2) which the Debtor (a) either knew to be false or made with reckless disregard for its truth and (b) made with the intent to deceive; and (3) the Plaintiff justifiably relied on the false representation. *Vozella v. Van* Aswegen, 366 B.R. 850, 864, Bankr. LEXIS 1206 (2007). Reliance is justifiable given circumstances of a particular case and the characteristics of a particular plaintiff. *Field v. Mans, 516 U.S. 59, 74-75, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995)*.

4

Here, the Debtor made multiple false representations of fact to induce Ms. Asher to enter into the loan. Each one on its own constitutes a material representation that establishes Ms. Asher's $600,000 loan to the Defendant as an exception to discharge

### A. DEFENDANT REPRESENTED THAT BLACK BELT WOULD BE A "TOP-DOWN" ORGANIZATION WITH MS. ASHER AT THE TOP

Evidenced by his own testimony that indicate his understanding of the Operating Agreement, it is clear that Mr. Petti had no intention or at the very least reckless disregard for the truth as to his representations regarding company management and therefore it should be found that Ms. Asher's debts are non-dischargeable under Section 523(a)(2)(a).

It is undisputable evidence that the Parties agreed that Ms. Asher would be the controlling member of the management team. Mr. Petti admitted this in interrogatories. It is further evidenced by Exhibits identified in the Operating Agreement signed by all parties. With that said, Mr. Petti testified that he had no understanding of this operating agreement and that while he understood that it was supposed to be run with Ms. Asher at the helm, the company was managed as a "free-for-all." Therefore, in practice, Mr. Petti did not fulfill his representation to Ms. Asher because he simply disregarded any understanding of how it would operate. Further, Ms. Asher was reasonable to believe Mr. Petti, as he held himself out as an experience manager.

### B. MS. ASHER'S RELIANCE ON THESE MATERIAL MISREPRESENTATIONS WERE JUSTIFIABLE.

A subjective review of Ms. Asher's reliance would be justifiable. Through testimony, it will be evident that Defendant and his partner, Mark Abraham courted Ms.

5

Asher vigorously. From the start, Defendant and his partners entertained her questions and invited her to the brewery. Defendant deliberately enticed Ms. Asher so that she would grow to trust them. After some time, their scheme succeeded. Ms. Asher was led to believe that Defendants were dealing with her honestly. Defendant held himself out as an expert and after some time, Ms. Asher grew to trust Defendant. It will be shown that Defendant's scheme was deliberate and therefore, entitles Ms. Asher to judgment.

## II.    BY FALSIFYING AND THEN CONCEALING DOCUMENTS, DEFENDANT WILFULLY AND MALICIOUSLY BREACHED HIS FIDUCIARY DUTY TO MS. ASHER

For a plaintiff to prevail under 11 U.S.C. §523(a)(4), a Plaintiff must show that the Debtor committed: (1) fraud or defalcation while acting as a fiduciary; (2) embezzlement; or (3) larceny. 11 U.S.C. §523(a)(4)

It has been established in Illinois that in a closely held corporation, the shareholders of a company owe a fiduciary duty to each other to deal fairly, honestly, and openly with the corporation and with fellow shareholders. *Martello v. Fowers (In re Fowers)*, 360 B.R. 888 (Bankr. N.D. Ind. 2007). In addition, for purposes on 523(a)(4), the President of a corporation is imposed the same fiduciary duty to manage the company to the benefit of all the shareholders. *Id. at 895.*

The Seventh Circuit has made it clear that misrepresentation and reliance thereon are not always required to establish actual fraud. *McClellan v. Cantrell*, 217 F.3d 890 (7th Cir. 2000).

> Fraud is a generic term, which embraces all multifarious means which human ingenuity can devise, and which are resorted to by one individual

6

to gain an advantage over another by false suggestions or by the suppression of truth. No definite invariable rule can be called down as a general proposition defining fraud and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated."
*Id. at 893.*

All that needs to be established: (1) a fraud occurred; (2) the debtor intended to defraud the creditor; and (3) the fraud created the debt that is the subject of the discharge dispute. *Id.*

In order to sustain an action under 11 U.S.C.S. § 523(a)(6), a creditor must demonstrate the following: 1. That the debtor's actions caused an injury to the person or property interest of the creditor. 2. That the debtor's actions which caused the injury were the result of willful conduct by the debtor by which the debtor intended to affect an injury to the person or property interest of the creditor. 3. That the debtor's willful acts were undertaken in a malicious manner. *Martello v. Fowers (In re Fowers)*, 360 B.R. 888 (Bankr. N.D. Ind. 2007). Conduct is considered "malicious" under §523(a)(6) if it is undertaken "in conscious disregard of one's duties or with just cause or excuse." *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994).

The evidence will show that Defendant's deliberate decisions were personally responsible for the ultimate demise of the business. As stated in the previous section, a cornerstone of Black Belt's success plan was to retain the Cook County distribution rights of the product. Ms. Asher's made it clear to Defendant and their partner that this was non-negotiable as a condition of her coming into the business. Without a guarantee on this, Ms. Asher refused to come into the business in the first place. To retain

7

distribution rights, a company would have to apply for a Class I Brewer's License with the Illinois Liquor Control Commission. After that, said company would have to apply for through an application process, which would include a distribution agreement that clearly states all the counties that a distribution company would serve.

The evidence will show, contrary to this well understood cornerstone of their business plan, Defendant went against the wishes and intentions of Black Belt and gave away the Cook County distribution rights. Mr. Petti achieved this through deception and through negligence. Either on its own would be enough to find a breach of his fiduciary duty. . *McClellan v. Cantrell*, 217 F.3d 890 (7th Cir. 2000). The evidence will show that there were multiple distribution agreements drafted. The evidence will show that Mr. Petti showed Ms. Asher a distribution agreement that followed Black Belt's guidelines. The evidence will also show that there was another distribution agreement that held these same rights for CBT. This copy was filed with the Illinois Liquor Commission by Mr. Petti. Whether he understood it to be false does not speak to malice under the code. That he merely filed an improper agreement is all that needs to be shown to meet the requirements under 523(a)(4). Defendant served the interests of his long-time friend and violated his fiduciary duty to Black Belt. His acts constitute malice under the Code and therefore should find the court should find for Plaintiff.

## CONCLUSION

The testimony at trial, in conjunction with the evidence to be entered, shall establish that Petti made misrepresentations to Ms. Asher and his conduct in operating the business constitute fraud in his capacity as a fiduciary. Therefore, Ms. Asher's $600,000 loan should be found non-dischargeable under the bankruptcy code and awarded as well as any other relief that the court deems just.

Dated: July 6, 2022                                        RESPECTFULLY SUBMITTED BY:

                                                                                                 CAREN ASHER

                                                                                                  /s/ Jason M. Shimotake
                                                                                                  Attorney for the Plaintiff

Jason Shimotake
The Shimotake Law Firm, LLC
One South Dearborn St., 20th Fl.
Chicago, IL 60603
Phone: (312) 620-6499
Email: jason@shilawfirm.com